## ALPHONSO JOHNSON *vs.* JULIUS A. GORHAM.

Assertion of title by the possessor of land is an important circumstance indicating adverse possession and ouster of the real owner, and the absence of such assertion may be an important circumstance indicating that the possession is not adverse.  But the question of ouster must depend upon all the circumstances of the case, and it is not essential that the possessor should hold the land claiming it as his own.  Such claim of ownership is not, as matter of law, an indispensable element of adverse possession.

In trespass *qu. cl.*, the declaration alleged that the defendant broke and entered into the plaintiff's land, and trod down and destroyed the herbage, and cut down the trees, and dug up the ground, to the plaintiff's damage.  The plaintiff introduced evidence to prove that the defendant not only cut down the trees, but *removed* the wood; and the court charged the jury that in estimating damages they might take into consideration the cutting and *removal* of the wood, if the trespass was one continued act.  Held, that the evidence was inadmissible, and the charge erroneous.

TRESPASS *qu. cl. fregit*; appealed from the judgment of a justice of the peace to the Superior Court, and tried on the general issue closed to the jury, before *Sanford, J.*, with notice of title in the defendant by adverse possession.  The jury returned a verdict for the plaintiff, and the defendant moved for a new trial for error in the rulings and charge of the court.

The declaration alleged that the defendant " with force and arms broke and entered into and upon the described land, and trod down and destroyed the herbage then and there growing, and cut down the trees, and dug up the ground, to the plaintiff's damage."

The plaintiff claimed to have proved that he was the owner of a tract of wild, uncultivated, mountain woodland, bounded easterly on a certain highway, and that he owned and was in possession of the land to the centre of said highway, lying easterly of and adjoining the described premises, and that the trespasses were committed by the defendant on that portion of the land lying westerly of the centre of the highway, and between the centre of the same and the fence on his land near the westerly boundary of the highway. That the highway was four rods in width, and was laid out and established by the ancient proprietors in 1753, at the time of the original allotment of this land in the eighth division of lands in New Haven, and that each intermediate consecutive owner of the land had been bounded in his deed easterly on said highway, and had occupied to the centre thereof. That the defendant, about eight years before the commission of the trespasses complained of, became the owner of the tract of land lying easterly of said highway, and adjacent to the plaintiff's premises, and that in the deed which he received from the former owner of the land, the defendant was bounded westerly on said highway, and that he and his grantors, for a period of more than seventy-five years, had claimed to own, and had occupied, only to the centre of the highway. That the different owners of land lying on the westerly side of the highway had never made any division fence between these several tracts of land, as it was land only used to raise wood upon, and was too rough for cultivation; and for their joint convenience, and to protect their sprouts, about seventy years ago built a fence on the westerly side of the highway, and upon a line of ancient marked bounds, with the initials of the names of the proprietors of the first allotment marked thereon.

The defendant claimed, and offered evidence to prove, that the highway was on the westerly side of the fence, and that he and his grantors had always occupied the land on the easterly side of the fence, and owned up to the fence, and had acquired title thereto by adverse possession.

The plaintiff, in his opening, offered evidence to prove that his father in his life-time, and while he was the owner of the

premises which the plaintiff now owns, cut off the wood from the same, and from the fence to the centre of the highway, on the easterly side of the fence. The defendant objected to the admission of this evidence, as immaterial and inadmissible for any purpose, but the court admitted it.

The plaintiff further claimed to have proved that the trespass consisted of an entry upon the land, and cutting off and removing the wood, and that the same was one continuous act. The defendant admitted that he cut the wood, and claimed that he had a right to do all that he did do; but the defendant objected to any evidence of his removal of the wood under the allegations of the declaration. The court overruled the objections, and admitted the evidence.

The plaintiff claimed, and it was admitted, that the plaintiff owned the next lot north of the one described in the declaration, there being no fence between said lots. And the plaintiff offered evidence to prove that the defendant had cut one or two poles on the land against said north lot, between the fence and the centre of the highway, as claimed by the plaintiff, and that thereupon the plaintiff forbade the defendant from trespasssing upon his land, and that the defendant ceased so to do, and the plaintiff removed his fence from the westerly side of the highway, a distance of two rods, into the centre of the highway against said north lot, as he claimed it, and maintained it there for several years before the trespasses of which he complains, and that the defendant had not disturbed him in the possession of the same, but that the plaintiff had had the sole and exclusive possession thereof.

The defendant requested the court to charge the jury, that if the jury should find for the plaintiff, they could render a verdict for damages only for the injury done to the land and trees, and could not include in their estimate of damages anything on account of the alleged removal and conversion of the wood by the defendant. But the court did not so instruct the jury, but instructed them that in determining the damages, they might take into consideration any act of the defendant which attended and gave character to the trespass, and

they might take into consideration the cutting and removal of the wood, if the trespass was one continuous act.

On the trial, both parties claimed to be in the exclusive possession of said strip of land, two rods in width, being the half of the highway as claimed by the plaintiff, and lying easterly of and adjacent to said fence, and on which it was claimed that the alleged trespass was committed. And the defendant requested the court to charge the jury, that if the jury should find that the defendant, previous to the alleged trespasses, had entered into and taken possession of his lot of land up to the fence, and over the *locus in quo*, as his own, and had at the time of said trespasses such possession, and was taking the use and profit of the land up to the fence, and was managing with the property as an owner manages with his own property, without any license or consent of the plaintiff, and without any idea of being accountable to the plaintiff, then the defendant was in possession, and the plaintiff was not, and the jury must render a verdict for the defendant. But the court omitted so to instruct the jury.

The plaintiff introduced evidence to show, that in the deed the defendant received from his grantor, the defendant was bounded west on the highway, and also the testimony of the defendant's grantor, that though he occupied the land up to the fence while he owned the defendant's land, and for more than fifteen years before he sold to the defendant, yet he never occupied to the fence under a claim of right.

The defendant, on the other hand, introduced evidence to show that his grantor had in fact occupied the land, on which the trespass was alleged to have been committed, up to the fence, without any license or consent from the plaintiff, or from those under whom the plaintiff claimed, and that such occupation had been continued by the defendant and his grantor for upwards of thirty years before the time of said alleged trespasses.

The defendant requested the court to charge the jury, that a possession of lands may be adverse, although the party in possession claims no title in himself, but acknowledges that the title is in another, provided he occupies without the lat-

ter's license or consent; that title by adverse possession does not depend upon the motives of the disseizor, and that the true criterion is whether the possession can be considered the constructive possession of the legal proprietor.

But the court did not so instruct the jury, but instructed them as follows: That this action was based upon possession, and that in order for the plaintiff to recover, he must establish,_to the satisfaction of the jury, that he was in the actual, exclusive possession of the land, or that he had a legal title to it, in connection with the fact that it was not in the actual, exclusive possession of another or others, and that if the defendant had proved that he was in the actual possession of the land, the plaintiff could not recover, or if the defendant had proved that the highway was upon the west side of the fence, it was admitted by the plaintiff that he could not recover, or if the defendant had the title to the land upon which the alleged trespass was committed, the plaintiff could not recover. That a person, to acquire a title by possession, must have the actual use and occupation of the land; that it was essential that the possession should be adverse to the right of the owner, and that the possessor should hold the land claiming it as his own, and denying the right of everybody else. That to make out an adverse possession, there must be strict proof; that every presumption is in favor of possession in subordination to the title of the true owner. It must be a possession under a claim or color of title, and exclusive of any right.

*C. Ives* and *Alling*, in support of the motion.

*Doolittle*, contra.

The defendant objects to the plaintiff's recovery—

1. Because the plaintiff was permitted to prove that his father, in his life-time, and while he was the owner of the premises which the plaintiff now owns, cut off the wood from the same, and from the fence to the centre of the highway on the easterly side of the fence. The defendant gave notice that he claimed title by adverse possession. The order of proof is always subject to the discretion of the court. If this

evidence possessed any weight, even in the remotest degree, it was admissible.    *Marvin* v. *Keeler*, 5 Conn., 271.

This evidence was admissible to support the plaintiff's claim to possession, and to elucidate the character of the possession.    The plaintiff had a right to prove that he and his grantors had exercised all the rights of ownership that the nature of the soil and the character of the land would permit.    The presumption would be that the possession of the plaintiff's father continued till the plaintiff took possession, and that his possession continued the same. *Hale* v. *Wiggins*, 33 Conn., 104, 101.

2.    The evidence was admissible that the defendant entered upon the land, and at the same time cut and removed the wood.    The gist of this action is the unlawful entry, and we may prove every circumstance which gives character to the transaction.    Sedgwick on Damages, 134 ; *Treat* v. *Barber*, 7 Conn., 277, 279 ; *Barnum* v. *Vandusen*, 16 id., 205, 200 ; *Parmalee* v. *Baldwin*, 1 id., 313, 317.

3.    The evidence that the plaintiff had erected a fence in the centre of the highway, as the plaintiff claimed it existed, between the land of the plaintiff and defendant, a few rods north of the place where the trespass was committed, and that the defendant had acquiesced, was admissible.

4.    The court instructed the jury properly, when it instructed them that in determining the damages they might take into consideration any act of the defendant which attended and gave character to the trespass, and they might take into consideration the cutting and removal of the wood, if the trespass was one continuous act.    The declaration alleges that the defendant entered upon the premises and cut down the trees, but does not allege a distinct act of removal. The trees were part and parcel of the realty.    The felonious taking would not constitute a theft, and is a trespass.    2 Swift Dig., 310 ; Wharton on Crim. Law, § 1753 ; *Holly* v. *Brown*, 14 Conn., 255 ; *Church* v. *Meeker*, 34 id., 421.

5.    The charge upon possession was unexceptionable. *Church* v. *Meeker*, *supra* ; *Huntington* v. *Whaley*, 29 Conn., 391 ; *Griswold* v. *Butler*, 3 id., 246, 227.

6. The specific requests were erroneous. *Comins* v. *Comins*, 21 Conn., 416, 413. These were wild lands. *Wheeler* v. *Hotchkiss*, 10 Conn., 231, 225. Every fact the jury were requested to find might be true, and yet the plaintiff have all the possession that the nature of the land would admit. All this might be true, and yet the defendant would not have the actual possession, or the exclusive possession. The court could not charge, as matter of law, that the defendant was in possession, without reference to the acts of the plaintiff. The intention of the owner to claim adversely must exist, and is an essential ingredient in a case of adverse possession. When a request for instructions is in part abstract, the court is not bound to dissect it, and charge the jury as to that part which relates to the case. *Rathbone* v. *City Fire Ins. Co.*, 31 Conn., 205, 193 ; *Miles* v. *Douglas*, 34 id., 393 ; *Dulles* v. *DeForest*, 19 id., 201, 190.

SEYMOUR, J. This is an action of trespass *quare clausum*, in which the plaintiff avers that the defendant with force and arms broke and entered into and upon the plaintiff's land, and trod down and destroyed the herbage then and there growing, and *cut down the trees*, and dug up the ground, to the plaintiff's damage.

Under this declaration the plaintiff was permitted, against the defendant's objection, to prove that the defendant not only cut down the trees, *but removed the wood*, and the jury were instructed that in estimating damages they might take into consideration the cutting and *removal* of the wood, if the trespass was one continued act. It is conceded that the cutting the trees and the carrying away the wood may be parts of one continued act, and if they are so, the plaintiff may so treat them, and recover for the entire act in one count, provided the count be with proper averments adapted to the case. The cutting, however, may be wholly unconnected with the carrying away of the trees cut, and then, by strict rule, there should be two counts for the two acts, one for the cutting, and another for the carrying away. But where the plaintiff claims damages in his declaration for the cutting only, the defendant

cannot be required to come to trial prepared to meet evidence of damage done by removal. The office of the declaration is to apprise the defendant fairly and fully of the plaintiff's claims; and the cutting of the trees does not involve their removal. The mere cutting may be a slight injury to the owner, and sometimes might be a benefit. The carrying them away, and converting them to the defendant's use is quite a distinct thing.

For this cause there must be a new trial.

The charge of the judge in regard to adverse possession was probably correct in reference to the circumstances of the case before him, but abstractly considered is liable to objection, and would be quite incorrect in reference to cases that have occurred, and may again occur. The charge is as follows: " A person to acquire a title by possession, must have the actual use and possession of the land. It is essential that he possession should be adverse to the right of the owner, and that the possessor should hold the land *claiming it as his own*, and denying the right of everybody else."

In the case of *Huntington* v. *Whaley*, 29 Conn., 398, Judge SANFORD giving the opinion of the court says: " The only legitimate inquiry for the jury was, whether the defendant, and those under whom he claimed, had for the period of fifteen years had the actual, open, adverse occupancy and possession of the controverted property, *claiming it as their own*, and actually excluding all other persons from the possession." As applied to the facts in the case of *Huntington* v. *Whaley* this language is not open to objection ; but as an absolute proposition of law, and as a complete definition of adverse possession applicable to all cases, the charge of the judge below, and the language quoted from Judge SANFORD's opinion in *Huntington* v. *Whaley*, require explanation and qualification.

In the case of *French* v. *Pearce*, 8 Conn., 442, Judge HOS-MER, in speaking approvingly of the case of *Bryan* v. *Atwater*, 5 Day, 181, says, " the first principle asserted in that case is, that to render a possession adverse it is *not* necessary that it should be accompanied *with a claim of title*, and with the denial of the opposing title." Now although the language of

Judge SANFORD in *Huntington* v. *Whaley* is in direct contradiction to the language of Judge HOSMER in *French* v. *Pearce*, it was not Judge SANFORD'S intention to question the soundness of Judge HOSMER'S views. Judge SANFORD did not undertake to give a complete definition of adverse possession as applicable to all cases; he intended merely to say that, situated as the defendant was in the case of *Huntington* v. *Whaley*, the legitimate inquiry for the jury was whether the defendant had possession of the controverted property, *claiming it as his own.* From what appears of the facts in the case now under our consideration, the absence of a claim of ownership on the part of the defendant would appear to be a very decisive circumstance to show that the possession was not adverse, but it is clear that such claim of ownership is not, as matter of law, an indispensable element of adverse possession. A party in possession of land under a defective deed may openly admit that the legal title remains in the grantor, and admit that his own ownership is therefore imperfect, and yet his possession may be adverse. The right of the owner of real estate is barred, if he suffer himself to be ousted of possession for fifteen years, and the true inquiry in these cases is whether the owner is ousted.

Judge INGERSOLL, in *Bryan* v. *Atwater*, places the subject in its true light, when he says: "To make a disseisin it is *not* necessary that the disseizor *should claim title* to the lands taken by him. It is not necessary that he should disclaim or deny the title of the legal proprietor. It is necessary only that he should enter into and take possession of the lands as if they were his own. \* \* \* If property be so taken and so used by any one, *though he claims no title*, but avers himself to be a wrong doer, yet by such act the legal proprietor is disseized."

The result of the cases is that assertion of title by the possessor is an important circumstance indicating adverse possession and ouster of the real owner, and the absence of such assertion may be an important circumstance, and often very important, as indicating that the possession is not adverse; yet the question of ouster is one that must depend upon all

the circumstances of the case, and it is not therefore strictly true, as stated in the charge under consideration, that it is essential that the possessor should hold the land *claiming it as his own*, and *denying the right of every body else.*

In the instance given above of the occupant under a defective deed, there is indeed a sense in which he may be said to claim the land as his own. He may properly assert his equitable title, as being superior to the legal title which he admits to be in his grantor. But whether he asserts such claim or not makes no difference with his rights. The mere fact of possession under a defective deed would, in general, indicate that the possession was adverse. In the case put by Judge INGERSOLL in *Bryan* v. *Atwater*, where the party in possession avows himself to be a wrong-doer, the true owner would be disseized, and the possession would be adverse, and in such a case there is clearly no claim of title by the possessor in any sense of the term.

New trial advised.

In this opinion the other judges concurred; except BUTLER, C. J., who did not sit.